UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HAIWEN CHEN<br><br>*Plaintiff,*<br><br>v.<br><br>EDUCATIONAL TESTING<br>SERVICE, INC,<br>A DELAWARE CORPORATION<br><br>*Defendant.* | Case No. 3:23-cv-02101-PGS-JBD<br><br><br>MEMORANDUM AND ORDER |

This case is before the Court on Defendant Educational Testing Service, Inc.'s ("ETS") Motion to Dismiss the Complaint. (ECF No. 27). For the reasons stated below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

I.

Plaintiff filed his Complaint in the District Court of Delaware on April 29, 2022. (ECF No. 1). Defendant filed its first motion to dismiss on May 26, 2022. (ECF No. 5). That motion was opposed by Plaintiff. (ECF No. 10). On March 1, 2023, the Honorable Colm F. Connolly granted Defendant's motion in part, finding that the District Court of Delaware lacked jurisdiction. (ECF No. 18). The case was transferred to the District Court of New Jersey. (*Id.*). Once the matter was transferred, some confusion arose as to whether the Court would rely and rule on the papers filed

1

in Delaware.  Making a long story short, Defendant filed the herein motion on May 25, 2023, (ECF No. 27), and oral argument was held on October 5, 2023.  Plaintiff filed his Opposition on October 25, 2023, (ECF No. 31), and Defendant filed its Reply Brief on November 14, 2023 (ECF No. 32).

This Court possesses jurisdiction pursuant to Title 28 U.S.C. § 1331 since Plaintiff alleges violations of the Age Discrimination in Employment Act ("ADEA"). 29 U.S.C. §§ 621–634.  The Court has supplemental jurisdiction over the accompanying state law claims for breach of covenant of good faith and fair dealing. Venue is proper under § 1391(b)(2) as "a substantial part of the events . . . giving rise to the claim" occurred in this District.  28 U.S.C. § 1391(b)(2).

## II.

This case arises from an employment dispute.  Plaintiff Haiwen Chen (hereinafter "Chen" or "Plaintiff") was a senior psychometrician employed by Educational Testing Services (hereinafter "ETS" or "Defendant") from January 22, 2002 until November 5, 2018. (ECF No. 1 at ¶ 7).  At the time of his dismissal, Chen was sixty-three years old. (*Id.*).

Chen worked for Defendant's Center of Global Assessment in the Psychometrics and Data Analysis group. (*Id.*).  Chen worked with five to six members on an international assessment team where Chen was distinguished as the eldest "member of the team, by about twenty (20) years, with the highest salary, and

close to retirement when he would be receiving his deferred compensation in the form of health benefits." (*Id.*). By 2010, Chen was a telecommuter and had relocated to Bear, Delaware. The municipality of Bear is approximately ninety miles away from ETS' home office in Princeton, New Jersey. (*Id.* at ¶ 9).

Issues arose in or around August 2018 when it was announced that Chen's team manager, Lale Khorramdel ("Khorramdel"), would be replaced by another team member, Fred Robin ("Robin"). (*Id.* at ¶ 1). Chen pleads that he was passed over for promotion despite having ten years of seniority over Robin. (*Id.*).

One month later in September 2018, Chen pleads that Robin and Khorramdel imposed a new job requirement on him. That is, Chen was required to be present in the office in Princeton, New Jersey three days per week (hereinafter the "in-office requirement"). Chen alleges that the in-office requirement was imposed only on him, and no one else on the team was required to change their conditions of employment so dramatically. (*Id.* ¶ 13). Chen objected to the in-office requirement because it would require Chen to drive approximately six to eight hours a week in commuting time between Bear, Delaware and Princeton, New Jersey. (*Id.*). Chen alleges that Robin explained the rationale for the in-office requirement as a means for Robin to "'get to know' Mr. Chen and determine how [Chen could] contribute to the team." (*Id.* at ¶ 14). Chen discounts the credibility of that stated reason because Robin and Chen had worked together for the previous ten years, including at least a year on the same team.

(*Id.*).

Chen pleads that two other telecommuters were comparators whose situations were similar to his own. Chen pleads that these individuals were allowed to work remotely. Specifically, Hyo Jeon—an employee in her thirties and residing in Long Island, New York—telecommuted to Princeton from Long Island. (*Id.* at ¶ 17). The other comparator, Peter van Rijin, resided in the Netherlands. Van Rijin was hired in October 2018—*after* the in-office requirement was imposed on Chen. (*Id.* at ¶¶ 16–18). At the time of his hiring, Chen alleges van Rijin was in his forties and allegedly had no prior working relationship with Robin. (*Id.*). In spite of this, van Rijin was allowed to work remotely. In addition to being younger than Chen and not subject to the same in-office requirement, Chen pleads that van Rijin had a lower salary than Chen, had less seniority than Chen, and was not close to retirement like Chen. (*Id.*). Chen pleads that van Rijin was "brought in to take [his] place." (*Id.* at ¶ 18).

On September 28, 2018, Chen filed a complaint under ETS' Employment Policies and Standards "for violation of the ADEA and Constructive Discharge" with ETS' Human Resources Department. (*Id.* at ¶¶ 20, 80).

Chen pleads that after ETS received his complaint, the following events occurred:

- Khorramdel and Robin criticized Chen's work product and denied Chen's application for vacation. (*Id.* at ¶ 23).

4

- On or about October 14 and 15, 2018, Chen realized that he was "not getting any data from the Data Analysis team (DA)" necessary to completing his job functions. (*Id.* at ¶ 28).

- On October 18, 2018, Robin warned Chen that failing to come into the office Monday, Tuesday, and Wednesday every workweek would amount to insubordination which could result in termination. (*Id.* at ¶¶ 29–30).

- On October 24, 2018, Chen met with Human Resources representative, Eric Waxman. Chen was advised the investigation into Chen's complaint was beginning "today." (*Id.* at ¶¶ 34–36).

- Two days later on October 26, 2018, Chen learned that Waxman had completed the HR investigation and that HR found that there was no evidence to support Chen's complaint. (*Id.* at ¶ 37).

- On October 29, 2018, Chen commuted to ETS' office. On that day, Chen emailed Robin stating: "I am on campus today, so if you want to discuss the work, I can come to your office." Chen pleads that he received no reply. (*Id.* at ¶ 39).

- On October 31, 2018, Robin emailed Chen that Chen "was to report to work 3 days a week at the ETS Rosedale [Princeton] Office. From 9:00 am to 5:30 pm." (*Id.* at ¶ 40).

- On November 5, 2018, Chen emailed Robin stating: "As you know, I have

- not received any work assignments for three weeks." (*Id.* at ¶ 41).

- On November 5, 2018, Chen was discharged at sixty-three years old for abandonment of his position. (*Id.*).

In his Complaint, Chen pleads that ETS is liable for six separate counts. Chen alleges discrimination under the ADEA (Count I); violations of federal and state law, and wrongful discharge in violation of the ADEA and public policy (Counts II, V, and VI); retaliation under the ADEA (Count III); and common law breach of the implied covenant of good faith and fair dealing (Count IV).

### III.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint "requires only a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, the complaint must allege "'enough facts to state a claim to relief that is plausible on its face.'" *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a probability requirement; it asks for more than a sheer possibility that the defendant acted unlawfully. *Id.*

In reviewing a motion to dismiss, the Court "accept[s] as true all allegations in

the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and . . . construe[s] them in a light most favorable to the non-movant." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). The Court should disregard legal conclusions and "recitals of the elements of a cause of action, supported by mere conclusory statements." *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). The Third Circuit has set forth a three-part test for determining whether a complaint may survive a motion to dismiss for failure to state a claim:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Id.* at 130 (alteration in original) (quoting *Iqbal*, 556 U.S. at 675, 679).

## IV.

### a. Count I – Discrimination under the Age Discrimination in Employment Act

Plaintiff pleads discrimination under the ADEA for a purported campaign of age discrimination against Plaintiff which included the following: the promotion of employees with less experience than Plaintiff; dramatic changes in Plaintiff's work conditions (the imposition of the in-office requirement); and Plaintiff's constructive and effective termination. Defendant argues that Plaintiff is unable to satisfy all the

elements of a prima facie discrimination claim. The Court disagrees. For the reasons below, Count I survives the motion to dismiss.

To establish a prima facie case of discrimination under the ADEA, Plaintiff must show the following four elements: (1) he is at least forty years of age; (2) he was otherwise qualified for the position at issue; (3) he suffered an adverse employment action; and (4) the circumstances of plaintiff's rejection or replacement create an inference of age discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 (2000); *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016) (citing *Jones v. Sch. Dist. Of Phila.*, 198 F.3d 403, 410–11 (3d Cir. 1999)). Whether or not an employee was qualified for a position is evaluated under an objective standard. *See Weldon v. Kraft, Inc.,* 896 F.2d 793 (3d Cir. 1990).

Defendant argues that Plaintiff fails the second element of the prima facie test. Specifically, Chen's "refus[al] to work on-site as directed by his managers despite his managers' concerns that he had become disengaged from his project and ineffective in his communications" is evidence that Plaintiff was unqualified for the position. (ECF No. 27-1 at 9). At this stage, the Court finds this argument uncompelling.

When viewed objectively, Chen has pled that he was sufficiently qualified for the position he occupied at the time of his discharge. *See Weldon*, 896 F.2d at 798. Chen pleads that he worked for ETS for sixteen years prior to the events underlying the Complaint without any performance issues. (*See* ECF No. 1 at ¶¶ 7, 10). Chen

had been telecommuting for at least eight years by the time of the events underlying the Complaint. (*See id.* at ¶ 8). There are no allegations of poor performance reviews or other complaints about Chen's work or work product—only that Chen refused to comply with the in-office requirement. (*See id.* at ¶ 10). Chen's refusal to telecommute where the in-office requirement was allegedly imposed only upon him—but not upon the two other younger employees—does not demonstrate that he was unqualified for his position at this pleading stage. *See Gross v. Tris Pharma, Inc.*, No. 20-15432, 2023 WL 3597723, at *8 (D.N.J. May 22, 2023).

Defendant also argues that Chen fails the fourth element of a prima facie case. The facts of the Complaint are facially plausible to create an inference of age discrimination with respect both to Chen's alleged replacement by van Rijin and to the circumstances surrounding Chen's termination. In September 2018, a new boss—Fred Robin—assumed a position on Chen's team. One month later in October 2018, van Rijin—a new, younger employee who, significantly, had no prior relationship with Robin—was hired to the team to telecommute from the Netherlands. (*Id.* at ¶¶ 17–18). That same month, Chen stopped receiving work assignments and was told that not commuting into the ETS office three times per week would result in insubordination for which he might be fired. These facts are enough at this pleading stage to create an inference of age discrimination.

Given that Chen also satisfies prongs one and three of a prima facie case of age

9

discrimination—Chen was sixty-three when he was terminated and there was an adverse employment action (first, the dramatic changes to Chen's employment (in-office requirement) and second, that he was eventually terminated)—Count I survives the motion to dismiss.

### b. Counts II, V, and VI – Federal and State Law Violations and Wrongful Discharge Violation of the ADEA and Public Policy

From what the Court can gather, Plaintiff pleads a variety of common law claims related to the events underlying the Complaint. Plaintiff also pleads unspecified federal law violations. For the reasons below, the motion to dismiss Counts II, V, and VI is granted. Plaintiff may file an amended Complaint in accordance with the directives set forth below within thirty days of this opinion.

#### i. *Common Law Claims*

As a preliminary matter, Plaintiff's common law claims for state law violations and violation of public policy are preempted by the federal law claims for the same which Plaintiff has pled under the ADEA. *Petti v. Ocean Cnty. Bd. of Health*, 831 F. App'x 59, 64 (3d Cir. 2020); *see also Lawrence v. Nat'l Westminster Bank N.J.*, 98 F.3d 61, 73 (3d Cir. 1996). Since the common law interests do not protect interests "'in addition or aside from those'" protected by the statutory remedies, these claims are barred as duplicative of the statutory claims. Accordingly, these claims are dismissed with prejudice.

#### ii. *Federal Law Violations*

To the extent Plaintiff pleads violations of the ADEA separate from those listed in Count I, the Court is unable to ascertain precisely what relief Plaintiff seeks or on what basis. The ADEA makes it unlawful for an employer to "limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." 29 U.S.C. § 623(a)(2).

Plaintiff seemingly alleges in Count II that ETS established a manual and Employment Policies and Standards to prevent discrimination—a manual which included a policy of promptly investigating complaint—and that ETS failed to promptly and thoroughly investigate Chen's internal complaint. Plaintiff seems to argue that this amounts to a violation of the ADEA. It also appears that Plaintiff is pleading that ETS violated the ADEA "and other federal laws" by not following internal procedures laid out in these manuals by conducting a prompt and thorough investigation in Chen's allegation of age discrimination. (ECF No. 1 at ¶¶ 48–55).

Plaintiff makes conclusory statements that the internal investigation was not prompt or thorough. *Santiago v. Warminster Twp.*, 629 F.3d at 130 (3d Cir. 2010) (finding that the court should disregard conclusory statements amounting to legal conclusions). Further, Plaintiff fails to identify a cognizable claim in that the Plaintiff does not allege that ETS' internal policy violates the ADEA nor that ETS' HR's lack of action was motivated by Chen's age. *Smith v. City of Jackson*, 544 U.S. 228, 249,

(2005) (O'Connor, J., concurring) (reasoning 29 U.S.C. § 623(a)(2) makes plain "an employer is liable only if its adverse action against an individual is motivated by the individual's age"). As such, Count II is dismissed without prejudice. If the complaint is amended, Plaintiff must detail with specificity how these facts show a separate cause of action.

In Count V, Plaintiff pleads that an "improper motive" moved ETS to change Chen's working conditions in an attempt to persuade Chen to resign or be fired. How Count V is distinct from claims underlying Count I is unclear to the Court. Specifically, Plaintiff pleads that the improper motive was that Robin "wanted Mr. Chen to be replaced with a younger person on his team." (*Id.* at ¶ 76). The Court is unable to distinguish this behavior and the relief sought from that sought in Count I. In a similar way to Count V, Count VI outlines that Plaintiff was discharged because he filed an HR complaint. Again, the Court struggles to distinguish this claim from the claims or relief sought in Count I. Accordingly, Counts V and VI are dismissed without prejudice.

Plaintiff may refile a complaint detailing what relief he seeks and on what basis in accordance with the directives set forth above within thirty days of this opinion.

c. **Count III – Retaliation**

Plaintiff asserts an ADEA claim for retaliation. Defendant claims that the prima facie case of retaliation fails because Plaintiff can show "no causal connection between

12

Plaintiff's protected activity and his employment termination." (ECF No. 27-1 at 11). The Court disagrees and finds that Chen has pled a prima facie case of retaliation under the ADEA.

To state a prima facie case for retaliation under the ADEA, a plaintiff must show that there was a "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567–68 (3d Cir. 2002) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)); *Witcher v. Sodexho, Inc.*, 247 F. App'x 328, 331 (3d Cir. 2007).

Plaintiff pleads a prima facie case of retaliation for the events precipitating his termination. Specifically, Plaintiff has pled that there was a protected employee activity: Chen filed a complaint with ETS' HR department regarding alleged age discrimination on September 28, 2018. Around six weeks later, Chen was fired. Prior to being fired, Chen was denied a request for vacation and denied any work assignments. The amount of time that lapsed between these events is sufficient to satisfy the third element of a prima facie claim for retaliation since "temporal proximity between the employee's protected activity and the alleged retaliatory action may satisfy the causal link . . . at least where the timing is 'unusually suggestive of retaliatory motive.'" *Shaner v. Syntehes (USA)*, 205 F.3d 494, 505 (3d Cir. 2000).

As such, Defendant's motion to dismiss Count III is denied.

### d. Count IV – Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff pleads a common law breach of implied covenant of good faith and fair dealing in that ETS had a responsibility to supervise Chen and that when it failed to supervise Chen, ETS breached its responsibility in its acts or omissions, intentionally causing Plaintiff's termination. (ECF No. 1 at ¶¶ 65–67). For the reasons below, Plaintiff has pled a claim for breach of implied covenant of good faith and fair dealing to survive the motion to dismiss.

At this pleading stage, Plaintiff has identified contracts that are sufficient to give rise to a claim for breach of implied covenant of good faith and fair dealing. Although Plaintiff states that he was working under an implied employment contract, (ECF No. 1 at ¶ 71), Plaintiff pleads that ETS had Employment Policies and Standards which included Age Discrimination, Sexual Harassment, Hostile Work Environment, and Retaliation procedures to which he was a party. (*Id.* at ¶ 52). Under *Woolley v. Hoffmann-La Roche, Inc.*, an implied promise can arise from an employment manual, and that implied contract arising from an employment manual "does not protect against termination; rather, the implied promise is to safeguard the employee from arbitrary termination." *Berridge v. Nalco Co.*, No. 10-3219, 2013 WL 3216143, at *6 (D.N.J. June 25, 2013) (internal citations omitted).

The issue in this case is precisely why Chen was fired; further fact discovery

14

will develop the record to allow decisions on why Chen was fired and (1) if these ETS employment policies are sufficient to constitute a contract upon which a breach of implied contract could be based and (2) if the recitations in these manuals were intended to create legally binding obligations. *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 308 (3d Cir. 2004) (quoting *Geldreich v. Am. Cyanamid Co.*, A.2d 423, 427 (N.J. Super. Ct. App. Div. 1997)).

Defendant's arguments that an "implied covenant of good faith and fair dealing does not exist in at-will employment situations as a matter of law" in New Jersey lacks merit. First, a carte blanche policy of preventing at-will employees from pleading the implied covenant of good faith and fair dealing flies in the face of the public policy considerations underlying discrimination claims. Specifically, under New Jersey law, "the employment-at-will doctrine provides that 'an employer may fire an employee for good reason, bad reason, or no reason at all' *unless prohibited by law or public policy*." *Monaco*, 359 F.3d at 308 (emphasis added). Termination of an employee in violation of federal law falls within this carve out. Whether Chen was discharged in violation of federal law is precisely an issue to be decided by the jury and holds bearing on whether Chen can prove that there was an implied covenant of good faith and fair dealing. Defendant's motion to dismiss Count IV is denied.

An appropriate order follows.

## ORDER

**THIS MATTER** having come before the Court on Defendant Educational Testing Service, Inc.'s ("ETS") motion to dismiss (ECF No. 27); and the Court having carefully reviewed and considered the submissions of the parties, as well as the arguments and exhibits therein presented; the arguments presented at oral argument; for good cause shown; and for all of the foregoing reasons,

**IT IS** on this __2__ day of **January, 2024**,

**ORDERED** that ETS' motion to dismiss is hereby **GRANTED IN PART** and **DENIED IN PART**; and it is further

**ORDERED** that Defendant's motion is **DENIED** with relation to Counts I, III, and IV; and further

**ORDERED** that ETS' motion to dismiss is **GRANTED** with prejudice with respect to the common law claims underlying Counts II, V, and VI; and further

**ORDERED** that ETS' motion is **GRANTED** without prejudice as it relates to ADEA claims underlying Counts II, V and VI; and further

**ORDERED** that Plaintiff may file an Amended Complaint in accordance with this opinion within thirty (30) days from the date of this Order.



PETER G. SHERIDAN, U.S.D.J.